**NEW ENGLAND LEGAL FOUNDATION et al., Plaintiffs-Appellants,**

v.

**Douglas M. COSTLE et al., Defendants-Appellees.**

**No. 1595, Docket 79–6202.**

United States Court of Appeals, Second Circuit.

Submitted June 3, 1981.

Decided Aug. 24, 1981.

Wayne S. Henderson, Boston, Mass. (Kenneth O. Decko and John R. Rathgeber, Hartford, Conn., on the brief), for plaintiffs-appellants.

Robert F. Brooks, Richmond, Va. (W. Taylor Reveley, III, Robert M. Rolfe, and Hunton & Williams, Richmond, Va., Edward J. Walsh, Jr., Mineola, N. Y., on the brief), for defendant-appellee Long Island Lighting Co.

Mary L. Lyndon, Asst. Atty. Gen., State of N. Y., New York City (Robert Abrams, Atty. Gen., Shirley A. Siegel, Sol. Gen., and Marcia J. Cleveland, Asst. Atty. Gen., New York City, on the brief), for intervenor-appellee State of N. Y.

Before TIMBERS and KEARSE, Circuit Judges, and WERKER,* District Judge.

PER CURIAM:

This appeal, originally argued in our Court in April 1980, was from a judgment entered in the District of Connecticut, Jon O. Newman, *Circuit Judge*, sitting by designation, which dismissed, for failure to state a claim on which relief could be granted, appellants' complaint seeking declaratory and injunctive relief against the Administrator and Regional II Administrator of the Environmental Protection Agency (EPA) and against the Long Island Lighting Company (LILCO) based upon alleged violations of the Clean Air Act, 42 U.S.C. §§ 7401–7642 (Supp. II 1978), and the federal common law of nuisance. *New England Legal Foundation v. Costle*, 475 F.Supp. 425 (D.Conn.1979).

Our prior decision, 632 F.2d 936 (2 Cir. 1980), with which we assume familiarity, affirmed the judgment of the district court to the extent that it dismissed the complaint as against the EPA and its officers, but reserved decision with respect to that portion of the judgment which dismissed the complaint as against LILCO, pending review by the Supreme Court of *Illinois v. City of Milwaukee*, 599 F.2d 151 (7 Cir. 1979), in which certiorari had been granted on March 18, 1980. 445 U.S. 926 (1980).

We assume familiarity with the comprehensive statement of the factual and statutory background of this action set forth in Judge Newman's opinion of June 30, 1979. Briefly, to the extent relevant to the issue presently before the Court, the complaint alleged that LILCO maintained a common law nuisance by burning oil containing 2.8% sulphur at its Long Island power plants. LILCO's use of high sulphur fuel was authorized specifically by the EPA

* Hon. Henry F. Werker, United States District Judge for the Southern District of New York, sitting by designation.

in 1977.[1] In light of the recent decision of the Supreme Court in *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981), we affirm the judgment of the district court dismissing the complaint as against LILCO. Our affirmance is specifically on the ground that the EPA's approval of LILCO's use of high sulphur fuel precludes appellants from maintaining a common law nuisance action against LILCO.

In *City of Milwaukee* the Supreme Court held that plaintiffs there could not maintain a federal common law action to abate a nuisance resulting from the discharge into Lake Michigan of untreated or inadequately treated sewage. Defendants discharged pollutants into the lake pursuant to permits which had been issued by the EPA under the Water Pollution Control Act Amendments of 1972. The permits incorporated the water pollution standards set forth in the Act. 33 U.S.C. § 1251 *et seq.* (Supp. 1976). The Supreme Court held that, by imposing a complex regulatory system to govern the discharge of effluents into the nation's waters, Congress precluded the federal courts from fashioning common law remedies to sanction or abate conduct which had been approved specifically under the standards set forth in the Water Pollution Control Act.

In the instant case, we need not reach the broad question of whether the Clean Air Act totally preempts federal common law nuisance actions based on the emission of chemical pollutants into the air.[2] For even if such an action might be permitted in some circumstances, the Court's decision in *City of Milwaukee* makes it clear that appellants' claims here are barred on the narrower grounds relied upon by the district court in dismissing the complaint as against LILCO.

First, as stated above, the EPA specifically approved LILCO's conduct by a variance granted on August 26, 1977. The district court properly refused to devise an equitable nuisance remedy which would proscribe the conduct which was approved by that government agency acting within the scope of its regulatory authority.

---

1. The Clean Air Act requires each state to develop "state implementation plans" (SIPs), subject to the approval of the EPA. 42 U.S.C. § 7410. The SIP establishes emission limitations and pollution abatement measures in order to achieve and maintain the national ambient air quality standards required by the federal government. *See Manchester Environmental Coalition v. EPA*, 612 F.2d 56, 57 (2 Cir. 1979).

On August 26, 1977 the EPA approved a variance to the New York SIP which enabled LILCO to burn fuel with a 2.8% sulphur content. 42 Fed.Reg. 43,078–079 (1977). That variance expired on May 31, 1981. LILCO's request for renewal of its authorization to burn high sulphur fuel is still pending. 45 Fed.Reg. 50,832–833 (1980).

2. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981) (federal common law of nuisance claims dismissed because their underlying legal basis has been preempted by the Federal Water Pollution Control Act (FWPCA) and the Marine Protection, Research, and Sanctuaries Act (MPRSA)).

We note that there are similarities between the Water Pollution Control Act, which was the subject of *City of Milwaukee*, and the Clean Air Act, which is here involved. Arguably, such similarities might justify a broad prohibition against federal common law nuisance actions such as the instant one. *See, e.g., Ethyl Corp. v. EPA*, 541 F.2d 1, 17 (D.C.Cir.), *cert. denied sub nom. National Petroleum Refiners Assn. v. EPA*, 426 U.S. 941 (1976). We also note, however, that the Clean Air Act differs substantially from the Water Pollution Control Act in areas which the majority of the Court in *City of Milwaukee* found were especially significant but which bear no relation to the facts herein. For example, Justice Rehnquist, writing for the majority in *City of Milwaukee*, found it especially significant that under the Water Pollution Control Act the EPA regulated *every* point source of water pollution. 451 U.S. at 318 (emphasis in original). Under the Clean Air Act, in contrast, the states and the EPA are not required to control effluents from every source, but only from those sources which are found by the states and the agency to threaten national ambient air quality standards. 42 U.S.C. § 7410(a)(2)(d). In light of those and other differences, we leave for a more appropriate case the question of whether all *federal* common law nuisance actions involving the emission of chemical pollutants into the air are precluded by the statutory scheme set forth in the Clean Air Act.

■ Courts traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government. *E.g., Committee for Jones Fall Sewage System v. Train*, 539 F.2d 1006, 1009 (4 Cir. 1976). The exercise of such restraint is especially appropriate here where the conduct sought to be enjoined implicates the technically complex area of environmental law and where Congress has vested administrative authority in a federal agency presumably having significant technical expertise. In doing so, Congress has indicated that regulation may be better achieved through a comprehensive statutory approach than through ad hoc common law remedies. *City of Milwaukee, supra,* 451 U.S. at 326; H.R.Rep.No.91–604, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News 5356, 5371. The federal courts of course must bow to that expression of congressional intent. *City of Milwaukee, supra,* 451 U.S. at 323–24. To proceed otherwise by fashioning federal equitable remedies to proscribe the very conduct that the EPA, acting in its regulatory capacity pursuant to its statutory mandate, has specifically approved, as the district court below held, would be both counter-productive and beyond the proper scope of the judicial function. 475 F.Supp. at 441.[3]

■ Second, in the alternative, the district court properly denied appellants equitable relief because they have an adequate (and, we note, more appropriate) remedy at law. Appellants' attack on LILCO's conduct which had been approved by the EPA, as the district court held, "is, in effect, an attack upon the validity of the EPA-approved variance." 475 F.Supp. at 441, n.21. All claims against the validity of performance standards approved by final decision of the Administrator must be addressed to the courts of appeals on direct appeal. 42 U.S.C. § 7607 (1976); *see Oljato Chapter of Navajo Tribe v. Train,* 515 F.2d 654, 658–61 (D.C.Cir.1975). To the extent that appellants' complaint is based on LILCO's emission of sulfates which might not be embraced in a direct review pursuant to § 7607, Congress has provided the municipal appellants with the additional legal remedy of petitioning the EPA for review of the interstate effects of the alleged sulfate emission, 42 U.S.C. § 7426, with direct appeal to a court of appeals if further relief is required. 42 U.S.C. § 7607(b).

The detailed legal remedies provided by Congress for review of an EPA variance not only preclude the equitable relief sought by appellants, but substantiate our conclusion that a federal common law remedy would be contrary to congressional intent. "It would be quite inconsistent with [the statutory] scheme if federal courts were in effect to 'write their own ticket' under the guise of federal common law after permits have already been issued and the permittees have been planning and operating in reliance on them." *City of Milwaukee, supra,* 451 U.S. at 326.

We affirm the judgment of the district court to the extent that it dismissed the complaint as against LILCO for failure to state a claim on which relief could be granted. We do so substantially for the reasons set forth by Judge Newman in his opinion of July 30, 1979.

Affirmed.

---

**3.** Appellants have argued that the "savings clause" in 42 U.S.C. § 7604(e) preserved their common law remedies. The Court in *City of Milwaukee* held that a virtually identical provision of the Water Pollution Control Act, 33 U.S.C. § 1365(e), did not bespeak a congressional intent to preserve federal common law remedies inconsistent with the complex statutory scheme provided by that Act. 451 U.S. at 329. That forecloses the corresponding argument here. Similarly, 42 U.S.C. § 7416, which permits states to impose stricter emissions standards than those embodied in the Clean Air Act, does not suggest that the federal courts may impose stricter standards premised on federal common law. 451 U.S. at 327–28.