**UNITED STATES of America, Plaintiff,**

v.

**KIN–BUC, INC., et al., Defendants.**

**Civ. A. No. 79–514.**

United States District Court,
D. New Jersey.

Feb. 11, 1982.

W. Hunt Dumont, U. S. Atty. by A. Patrick Nucciarone, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Weiner & Hendler, P. A. by Benjamin Weiner, Harriet Derman, New Brunswick, N. J., for defendants Kin-Buc, Inc., Scientific, Inc., Wastequid, Inc., Filcrest Realty, Inc., and Inmar Associates, Inc.

Budd, Larner, Kent, Gross, Picillo & Rosenbaum by Dennis M. Reznick, Newark, N.

J., for defendants Earthline Co., Anthony Gaess, SCA Services, Inc., and SCA Services of Passaic, Inc.

Edward J. Egan, Scotch Plains, N. J., for defendants Marvin H. Mahan and Robert J. Meagher.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This is a motion brought by defendants for summary judgment dismissing plaintiff's sixty-ninth cause of action seeking damages under the federal common law of nuisance for air pollution. For reasons stated herein, the motion is granted.

Kin-Buc Landfill in Edison, New Jersey, was operated as a disposal site for solid and liquid municipal, industrial and chemical wastes. These wastes were received from over 350 sources located throughout seven states. After numerous fires and New Jersey Department of Environmental Protection Agency citations, the landfill was closed in June of 1976. On February 9, 1979 plaintiff, the United States of America, filed this suit against Kin-Buc owners and operators seeking preliminary and injunctive relief, penalties for violations of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251 et seq., and damages under the common law of nuisance for air and water pollution.

Defendants have previously moved to dismiss the common law claim for damages for water pollution. In light of Milwaukee v. Illinois, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), and Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), this court granted defendants' motion.[1]

Defendants now move for summary judgment on the common law action for nuisance as it relates to air pollution. Fed.R. Civ.P. 56(c) provides that summary judgment shall be granted if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." For purposes of this motion, there are no factual issues and the only legal issue presented is whether the federal common law of nuisance in the area of air pollution has been pre-empted by the Clean Air Act (CAA), 42 U.S.C. § 7401 et seq.

Despite the Court's declaration that "[t]here is no federal general common law," Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), a body of specialized federal common law has evolved. If the rights and duties of the parties are derived from a federal source, then federal common law may be applied. Clearfield Trust Co. v. United States, 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943). Specifically, in Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Court noted that "[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law, . . . ." 406 U.S. at 103, 92 S.Ct. at 1392 (citation omitted).[2]

The application of federal common law is not without restrictions. One of the most important was articulated in Clearfield Trust: federal common law can be applied, if at all, only "[i]n [the] absence of an applicable Act of Congress . . . ." 318 U.S. at 367, 63 S.Ct. at 575. As the Court later reiterated in Milwaukee v. Illinois, "when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts

1. The Supreme Court "has now held that the federal common law of nuisance in the area of water pollution is entirely pre-empted by the more comprehensive scope of the FWPCA, . . . . See Milwaukee v. Illinois, [451] U.S. [304] [101 S.Ct. 1784, 68 L.Ed.2d 114] (1981)." Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, 453 U.S. 1 at 20, 101 S.Ct. 2615 at 2627, 69 L.Ed.2d 435.

2. In Milwaukee v. Illinois, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114, the Court held that the 1972 amendments of the FWPCA pre-empted the federal common law of nuisance for water pollution. The issue before me is whether, under the test set forth in Milwaukee, the CAA similarly pre-empts the federal common law of nuisance for air pollution.

disappears." 451 U.S. at 314, 101 S.Ct. at 1791.

In *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), petitioner's helicopter, used in connection with its oil drilling operations in the Gulf of Mexico, crashed in mid-flight killing the pilot and three passengers. After it was established that petitioner's negligence caused the crash, the issue became whether the decedents' widows could recover damages for loss of society. The Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*, does not provide damages for loss of society and the Court refused to go beyond the statute.

> We realize that, because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. The Death on the High Seas Act, however, announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages.... The Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015 (citations omitted). The court later emphasized that the question in *Higginbotham* was whether "the legislative scheme 'spoke directly to a question,' ... not whether Congress had affirmatively proscribed the use of federal common law." *Milwaukee v. Illinois*, 451 U.S. at 315, 101 S.Ct. at 1791.

As noted earlier, the Court has held that the FWPCA pre-empts the federal common law of nuisance in the area of water pollution. In reaching this conclusion, the Court reasoned that "the question whether a previously available federal common-law action has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *Milwaukee v. Illinois*, 451 U.S. at 315 n.8,

101 S.Ct. at 1791 n.8. Thus an analysis of whether the CAA similarly pre-empts federal common law involves a review of both the statute and plaintiff's claim.

■ One of the stated purposes of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare...." 42 U.S.C. § 7401(b)(1). In general terms, the Act requires the Administrator of the Environmental Protection Agency (EPA) to designate air quality control regions. § 7407. The Administrator is then required to establish primary and secondary national ambient air quality standards for any pollutant that may reasonably be anticipated to endanger the public's health. §§ 7408, 7409. Each state must then submit a plan to the EPA which provides for the implementation, maintenance and enforcement of the ambient air quality standards in each air quality control region within that state. § 7410(a)(1). The EPA must approve the plan if it meets certain requirements; if the state plan is deficient or if a plan is not submitted, the EPA must prepare an implementation plan correcting the deficiencies. § 7410(c)(1).

Similarities between the CAA and the FWPCA have allowed "interpretations of provisions of one Act ... [to be] ... applied to comparable provisions of the other...." *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 17 (D.C.Cir. 1976) (citation omitted). Defendants argue that the two Acts are sister statutes and if the FWPCA pre-empts the federal common law of nuisance as to water pollution, it logically follows that the CAA has a similar effect on the federal common law of nuisance as to air pollution. However, this reasoning ignores the differences between the two acts. While the FWPCA regulates every point source of water pollution, the CAA regulates only those stationary sources of air pollution that are found to threaten national ambient air quality standards. Thus, it does not necessarily follow that the CAA pre-empts the federal common law of nuisance simply because the FWPCA does so. The CAA must be evaluated on its own terms.

Plaintiff, on the other hand, argues that the absence of a direct conflict between the CAA and federal common law means the common law action can be maintained. In *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114, the State of Illinois sought to impose greater effluent limitations than those which had been established by the EPA under the FWPCA. However, establishing stricter standards on the basis of federal common law would be, in effect, "providing a different regulatory scheme." *Id.* at 324 n.18, 101 S.Ct. at 1796 n.18. Likewise, in *New England Legal Foundation v. Costle*, 666 F.2d 30 (2d Cir. 1981), the court refused to grant federal common-law relief to a plaintiff that complained about air pollution from an activity that had been approved by the EPA under the CAA. However, in *Mobil Oil Corp. v. Higginbotham*, discussed earlier, granting damages for "loss of society" would not have been in direct conflict with the Death on the High Seas Act. Yet the Court refused to grant them because Congress had spoken directly to the question of damages in the statute; federal common law was not available to supplement Congress' answer. 436 U.S. at 625, 98 S.Ct. at 2015.

The proper test to apply to this issue is whether the scope of the legislative scheme established by Congress is such that it addresses the problem formerly governed by federal common law. *Milwaukee v. Illinois*, 451 U.S. at 315 n.8, 101 S.Ct. at 1791 n.8. Since Congress has addressed the problem of air pollution in the Clean Air Act, I find that the statute pre-empts plaintiff's federal common-law claim for nuisance. When President Carter signed the Clean Air Act Amendments of 1977 into law, he stated that he "believe[d] that the Congress ... ha[d] adopted a sound and *comprehensive* program for achieving and preserving healthy air in our Nation." *A Legislative History of the Clean Air Act Amendments of 1977*, United States Government Printing Office at 303 (emphasis added). Rep. Henry A. Waxman made similar comments: "We have laid out a *comprehensive* program to continue the progress initiated by the Congress 7 years ago." *Id.* at 334, 101

S.Ct. at 1801 (emphasis added). "The establishment of such a self-consciously comprehensive program by Congress ... strongly suggests that there is no room for courts to attempt to improve on that program with federal common law...." *Milwaukee v. Illinois*, 451 U.S. at 319, 101 S.Ct. at 1793 (citation and footnote omitted).

Plaintiff's complaint, as it relates to air pollution, alleges that as a result of defendants' activities such pollutants as vaporized nitric acid and polyvinyl chloride were released into the air. But the CAA establishes a complete regulatory procedure whereby various pollutants are identified, air quality standards are set, and procedures for strict enforcement are created. When Congress occupies the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency, there is no need for federal common law. *Milwaukee v. Illinois*, 451 U.S. at 317, 101 S.Ct. at 1792.

Finally, plaintiff cites two cases where a court has held that the CAA does not pre-empt federal common law of nuisance. The CAA contains a "citizen suit" provision which does not "restrict any right which any person ... may have under any statute or common law...." 42 U.S.C. § 7604(e). In *California Tahoe Regional Planning Agcy. v. Jennings*, 594 F.2d 181 (9th Cir. 1979), the court held that this section shows that Congress did not intend to pre-empt federal common law. Likewise, in *United States v. Atlantic-Richfield Co.*, 478 F.Supp. 1215 (D.Mont.1979), the court reached a similar conclusion based on 42 U.S.C. § 7610(a) which provides that the CAA does not limit the federal government's authorities and responsibilities under any other provision of law.

Given the fact that both of these decisions preceded *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114, they are not persuasive. The courts in both *Jennings* and *Atlantic-Richfield* also took notice of the fact that the FWPCA contains identical provisions: 33 U.S.C. §§ 1365(e) and 1371(a). Each court concluded, there-

fore, that the FWPCA does not pre-empt the federal common law of nuisance for water pollution. This holding, and this reasoning, was overruled in *Milwaukee*: "[Section 1365(e)] is virtually identical to subsections in the citizen suit provisions of several environmental statutes.... It most assuredly cannot be read to mean that the Act as a whole does not supplant formerly available federal common law actions but only that the particular section authorizing citizen suits does not do so." 451 U.S. at 328-29, 101 S.Ct. at 1798 (footnote omitted). Thus, the similar provisions of the CAA do not mean that federal common law has not been pre-empted by the statute.

Defendants' motion for summary judgment dismissing plaintiff's sixty-ninth cause of action seeking damages under the federal common law of nuisance for air pollution is granted. Defendants will submit an order within 5 days. No costs.